1  Richard D. McCune (State Bar No. 132124)
   rdm@mccunelawgroup.com
2  Emily J. Kirk (IL State Bar No. 6275282)*
   ejk@mccunelawgroup.com
3  Valerie L. Savran (State Bar No. 334190)
   vls@mccunelawgroup.com
4  **MCCUNE LAW GROUP, APC**
   18565 Jamboree Road, Suite 550
5  Irvine, California 92612
   Telephone: (909) 557-1250
6

7  [additional counsel appear on signature page]

8  *Attorneys for Plaintiff Carrie Nicholes and
   the Putative Class*
9
   *Pro Hac Vice* applications to be submitted
10

11              **THE UNITED STATES DISTRICT COURT**

              **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
12
                      **SAN JOSE DIVISION**
13
   CARRIE NICHOLES, individually, and on        Case No.
14 behalf of all others similarly situated,
                                                 **CLASS ACTION COMPLAINT FOR**
15                                               **VIOLATIONS OF:**
                     Plaintiff,
16          vs.                                  (1) **THE LANHAM ACT, SECTION 43,**
                                                     **15 U.S.C. § 1125(a)(1)(A);**
17 7 CUPS OF TEA, CO., d/b/a 7 CUPS, a          (2) **THE LANHAM ACT, SECTION 43,**
   Delaware Corporation, and DOES 1 through         **15 U.S.C. § 1125 (a)(1)(B);**
18 5, inclusive,                                 (3) **THE MARYLAND CONSUMER**
                                                     **PROTECTION ACT;**
19                   Defendants.                 (4) **COMMON LAW UNFAIR**
                                                     **COMPETITION;**
20                                               (5) **COMMON LAW TORTIOUS**
                                                     **COMPETITION WITH ECONOMIC**
21                                                   **RELATIONS;**
                                                 (6) **COMMON LAW APPROPRIATION**
22                                                   **OF NAME OR LICENSE AND**
                                                     **INVASION OF PRIVACY;**
23                                               (7) **COMMON LAW FALSE LIGHT**
                                                     **INVASION OF PRIVACY**
24

25                                               **CLASS ACTION**
26
                                                 **DEMAND FOR JURY TRIAL**
27

28

                              **-1-**

Plaintiff Carrie Nicholes ("Plaintiff"), on behalf of herself and all others similarly situated, brings this class action for damages and equitable relief against 7 Cups of Tea, Co., d/b/a/ 7 Cups ("7 Cups" or "Defendant").  Plaintiff alleges the following based on personal knowledge as to the allegations regarding herself, the investigation of her counsel, and information and belief as to all other allegations:

## INTRODUCTION

1.       Defendant 7 Cups is an online mental health and emotional support platform that is accessible worldwide.  It offers services through its website and mobile applications, marketing itself as the "world's largest mental health community."

2.       7 Cups purports to provide free mental health support by connecting users with a network of "trained listeners" who offer anonymous, text-based peer support.  However, these listeners are not licensed mental health professionals.

3.       In addition to its free listener service, 7 Cups offers paid subscription plans that grant users access to purported licensed therapists.  These plans range from text-only therapy to higher-cost video-based therapy packages.

4.       7 Cups also hosts a "provider directory" listing hundreds, if not thousands, of mental health professionals, allegedly to assist users in finding local in-person care.  On information and belief, the vast majority of these professionals have no actual affiliation with 7 Cups, are unaware their profiles (which may or may not be accurate) are displayed, and have not authorized the use of their names, likenesses, or credentials to be included in this directory.

5.       In the directory, each provider profile includes a button labeled for users to click in order to contact the provider of their choice for services.  When a user submits their contact information, instead of going directly to the provider, it goes to 7 Cups which then promises to contact the provider on the user's behalf.  However, instead of actually contacting the provider and connecting them to the user, 7 Cups uses the contact information the user provided and inundates them with messages promoting its own services, including encouraging users to use one of 7 Cups unlicensed "listeners" while they are waiting for the provider to contact them.  In reality, the providers are never contacted by 7 Cups, and users are instead funneled into 7 Cups' system of paid

CLASS ACTION COMPLAINT

subscription options for its services.  7 Cups banks on the user becoming satisfied with its services while "waiting" for the local provider to contact them, which they know is never going to happen.

6.    7 Cups exploits these unauthorized listings to mislead users into believing the providers are affiliated with 7 Cups and accessible through the platform.  In doing so, 7 Cups diverts users for its own commercial gain, disregarding user confusion and the reputational harm to providers who are never contacted.

7.    Plaintiff is a licensed mental health provider whose name, credentials, and profile were published on Defendant's website directory without her knowledge, consent, or authorization. Upon discovering the unauthorized listing, Plaintiff attempted to initiate contact with herself through the 7 Cups platform. She did not receive any communication at her business and was instead flooded with promotional emails advertising 7 Cups' services. After realizing the nature of the scheme, Plaintiff demanded removal of her profile, which required multiple follow-up communications before Defendant ultimately complied. On information and belief, numerous other providers remain listed without consent and are either actively seeking removal or unaware they have been included at all.

8.    Plaintiff brings this class action on behalf of providers who, like her, were or are listed in 7 Cups directory without their knowledge or consent.  Plaintiff seeks a class-wide injunction to stop 7 Cups' false and unlawful advertising and unfair competition practices, an order for disgorgement of profits, compensatory, actual, and statutory damages, including damages for loss of reputation and goodwill, punitive and enhanced damages for willful and knowing misconduct, attorneys' fees, costs, and other such relief as the court deems just and appropriate.

## **PARTIES**

9.    Plaintiff Carrie Nicholes is a Licensed Certified Clinical Social Worker (LCSW-C) who resides and maintains a practice in Annapolis, Maryland.

10.    Defendant 7 Cups is a Delaware corporation with its principal place of business located in Palo Alto, California.

CLASS ACTION COMPLAINT

11.     Without limitation, Defendants DOES 1 through 5, include agents, partners, joint ventures, subsidiaries, and/or affiliates of Defendant. As used herein, where appropriate, the term "Defendant" is also inclusive of Defendants DOES 1 through 5.

12.     Plaintiff is unaware of the true names of Defendants DOES 1 through 5.  Defendants DOES 1 through 5 are thus sued by fictitious names, and the pleadings will be amended as necessary to obtain relief against Defendants DOES 1 through 5 when the true names are ascertained, or as permitted by law or the Court.

13.     There exists, and at all times herein mentioned existed, a unity of interest and ownership between the named defendants (including DOES) such that any corporate individuality and separateness between the named defendants has ceased, and that the named defendants are alter egos in that they effectively operate as a single enterprise or are mere instrumentalities of one another.

14.     At all material times herein, each defendant was the agent, servant, co-conspirator, and/or employer of each of the remaining defendants; acted within the purpose, scope, and course of said agency, service, conspiracy, and/or employment and with the express and/or implied knowledge, permission, and consent of the remaining defendants; and ratified and approved the acts of the other defendants. However, each of these allegations is deemed an alternative theory whenever not doing so would result in a contradiction with the other allegations.

15.     Whenever reference is made in this Complaint to any act, deed, or conduct of Defendant, the allegation means that Defendant engaged in the act, deed, or conduct by or through one or more of its officers, directors, agents, employees, or representatives who were actively engaged in the management, direction, control, or transaction of Defendant's ordinary business and affairs.

16.     As to the conduct alleged herein, each act was authorized, ratified, or directed by Defendant's officers, directors, or managing agents.

**JURISDICTION AND VENUE**

17.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332(a)(1), and 28 U.S.C. § 1367(a).  This Court also has subject matter jurisdiction pursuant to the Class

Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because: (i) there are 100 or more Class Members, (ii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states.

18.     Because Defendant's principal office is in Santa Clara County, California, Defendant is subject to personal jurisdiction in this state and district, pursuant to 28 U.S.C § 1391(b)(1).

<u>**GENERAL FACTUAL ALLEGATIONS**</u>

**A.     7 Cups**

19.     Defendant 7 Cups, originally launched in 2013 as "7 Cups of Tea," operates an online mental health platform. It claims to have facilitated over 1.8 billion messages, chats, and therapy sessions affecting more than 72 million users worldwide.

20.     7 Cups advertises a range of services, including "free 24/7 chats" with trained "listeners" for emotional support, as well as "affordable therapy" with licensed therapists for a monthly fee. It promotes both automated therapist matching for online therapy and a searchable provider directory that allegedly allows users to select local licensed providers for in-person care.

21.     For users seeking a licensed online therapist, 7 Cups offers paid plans: approximately $39.75 per week for online chat therapy and $74.75 per week for video therapy. 7 Cups claims these services are confidential and HIPAA-compliant.

**B.     7 Cups' Local Provider Directory**

22.     For users preferring local, in-person care, 7 Cups purports to "bridge the gap between online support and local treatment" by offering a "Local Help & Support directory" accessible through its online platform. This directory allows users to search by location and access information about local therapists, counselors, treatment centers, and community organizations.

23.     Once providers are identified, users are presented with information about the provider, including their name, credentials, specialties, and bios or profiles. A "Send Message" or "Request a Connection" button appears beneath each provider's name, inviting users to submit a contact form.  7 Cups represents that it will forward the request and contact information to the selected provider.

CLASS ACTION COMPLAINT

24.    Beneath each provider's profile, in small print at the bottom of the page, 7 Cups includes a disclaimer stating, "this clinician is not employed by 7 Cups." However, users must scroll through the entire profile to view this disclaimer, and even then, the statement does not clarify that the provider lacks any affiliation with 7 Cups, thereby leaving the misleading impression that some relationship exists.

25.    After the user submits the form, 7 Cups sends an automated email thanking the user and affirming that the provider has been contacted. The email then encourages the user to try its "free listener service" while waiting for a response.

26.    Following submission, 7 Cups continues to send marketing emails directing users to various features on its platform, including volunteer listeners, "Sharing Circles," online forums, "Growth Paths," health assessments, Q&A sections, and its "Academy" for professional development.

27.    However, on information and belief, 7 Cups does not contact the requested providers and has no intention of facilitating communication with them. Instead, it relies on user frustration and delay to steer users toward its paid services and internal features.

28.    Despite representing that listed providers are accessible through its platform, on information and belief, 7 Cups has no affiliation with the majority of providers in its directory. These providers have not authorized the use of their names, credentials, or profiles. Many are unaware they have been included and have not consented to the dissemination or accuracy of the information displayed.

29.    7 Cups uses these unauthorized provider profiles to attract users and capture their contact information under false pretenses, then markets its own products and services. It derives commercial benefit from misrepresenting the availability and affiliations of local professionals, at the expense of these local providers.

**C.    Plaintiff's Allegations**

30.    Plaintiff is one of potentially hundreds—if not thousands—of licensed mental health professionals whose names and profiles were included in the 7 Cups online directory without their knowledge or consent.

CLASS ACTION COMPLAINT

31.    Plaintiff first learned of her unauthorized inclusion when a friend discovered her profile on the 7 Cups platform. Upon further investigation, Plaintiff conducted a Google search of her own name. The top search result linked to a 7cups.com profile bearing her name, positioning 7 Cups ahead of her actual business, Cedar Counseling and Wellness, in search engine rankings (**Figure 1**). This placement strongly suggests that 7 Cups is leveraging providers' names and professional credentials to boost its own search engine optimization ("SEO") and direct internet traffic to its platform.



*Figure 1: Top Search Result*

CLASS ACTION COMPLAINT

32.    Following the Google link, Plaintiff visited her 7 Cups profile page, which prominently displayed a "Send Message" button (**Figure 2**).



*Figure 2: Profile Page "Send Message » Button*

CLASS ACTION COMPLAINT

1    33.    Clicking the button opened a pop-up form inviting users to submit their contact

2  information and promising that Carrie Nicholes would be contacted (**Figure 3**).

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24



25    ***Figure 3: Pop-up Form to Submit Contact Information and Message***

26

27

28

CLASS ACTION COMPLAINT

34.     Contrary to this representation, Plaintiff was never notified of any user inquiries or referral opportunities through 7 Cups (including the test inquiry she submitted for a referral to her own business). Instead, after submitting the test inquiry, Plaintiff began receiving numerous unsolicited marketing emails from 7 Cups promoting its own products and services. Between March 25, 2025, and May 23, 2025, Plaintiff received at least ten emails from 7 Cups. The images below show four of these emails:



**7 Cups Directory Request Follow-Up**

**From** 7 Cups of Tea <noreply@email.7cups.com>
**Date** Tue 3/25/2025 1:27 PM
**To**   Cj ███████████████

Hi Cj,

Thanks for using the 7 Cups directory! We've contacted the listed service provider you selected and will keep you updated.

In the meantime, did you know that 7 Cups is the world's largest emotional support community, with millions of members and over 500,000 trained volunteer listeners? Whether you're looking for someone to talk to or resources to support your well-being, we're here for you.

Explore 7 Cups

Warmly,
The 7 Cups Team

7Cups.com // 2955 Campus Dr, Ste 110, San Mateo, CA 94403
Want to stop receiving our emails? Unsubscribe Here

*Figure 4: March 25, 2025 Email from 7 Cups*

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



*Figure 5: April 1, 2025 Email from 7 Cups*

*Figure 6: May 3, 2025 Email from 7 Cups*

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12



*Figure 7: May 23, 2025 Email from 7 Cups*

13
14
      35.     As evident from the email images above, 7 Cups informed Plaintiff its attempt to

15
contact the provider had concluded, even though 7 Cups never contacted Plaintiff's business about

16
the test inquiry she submitted.

17
      36.     After discovering her unauthorized inclusion, Plaintiff sent a written request

18
demanding that 7 Cups remove her profile. In response, 7 Cups defended the listing, claiming it was

19
beneficial because they offered to forward referrals free of charge. Plaintiff sent a written request

20
reiterating that she had never received any referrals—despite testing the system herself—and

21
demanding immediate removal. Moreover, referrals from companies like Psychology Today, which

22
she was paying for, had significantly declined over the past handful of years.  7 Cups eventually

23
took her profile down. However, a colleague of Plaintiff who submitted a similar removal request

24
has continued to battle with 7 Cups. That colleague's profile remains active and publicly searchable

25
through the directory and Google.

26
      37.     7 Cups has systematically and without consent populated its directory with the

27
names and professional identities of mental health providers, including Plaintiff, to drive web traffic

28
and promote its own platform. By misrepresenting the nature of the profiles, it creates the false

CLASS ACTION COMPLAINT

impression that the listed local providers are affiliated with or available through 7 Cups. Never intending to actually contact the local providers, 7 Cups uses the information obtained through the contact form to promote its own services.

38.    7 Cups has illegally profited from the unauthorized use of local providers' reputations. These actions not only deceived the public but also harmed Plaintiff's professional standing, diverted potential clients, and subjected her to misleading commercial use of her name and likeness—all without permission or benefit.

## CLASS ACTION ALLEGATIONS

39.    The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

40.    Plaintiff brings this case, and each of the respective causes of action, as a class action on behalf of the following Classes:

> **Nationwide Class:** All providers whose profiles were or currently are listed in the 7 Cups online directory without their authorization.

> **Maryland Subclass:** All providers in Maryland whose profiles were or currently are listed in the 7 Cups online directory without their authorization.

41.    Excluded from the Classes are:  1) any entity in which Defendant has a controlling interest; 2) officers or directors of Defendant; 3) this Court and any of its employees assigned to work on the case; and 4) all employees of the law firms representing Plaintiff and the putative Class Members.

42.    This action has been brought and may be properly maintained on behalf of each Class Member pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

43.    Plaintiff reserves the right to re-define any of the class definitions prior to class certification and after having the opportunity to conduct discovery.

### A.    Ascertainability

44.    The members of the proposed Class and Subclass (collectively, "Class Members") are ascertainable because, on information and belief, they can be readily identified using

Defendant's business records, and other information kept by Defendant in the usual course of business and within its control.

**B.    Numerosity (Fed. R. Civ. P. 23(a)(1))**

45.    The Class Members are so numerous that individual joinder would be impracticable. While the exact number of Class Members is presently unknown to Plaintiff, on information and belief, it is ascertainable from available documents and Defendants' records obtainable through discovery. Plaintiff believes that the Nationwide Class will include hundreds, if not thousands, of providers, while the Maryland Subclass will, at a minimum, include hundreds.

**C.    Commonality (Fed. R. Civ. P. 23(a)(2))**

46.    This action involves common questions of law and fact.  The questions of law and fact common to both Plaintiff and Class Members include, but are not limited to, the following:

(a)    whether Defendant engaged in the activities alleged herein;

(b)    whether Defendant violated the statutes and common law doctrines identified herein;

(c)    whether Defendant included the identification and professional profiles and credentials of Class Members on its website;

(d)    whether Defendant obtained Class Members' permission before including their profiles and credentials on its website;

(e)    whether Defendant made any effort to ensure that Class Members received messages from users who clicked on the "Send Message" button associated with their profile listings on Defendant's website;

(f)    whether Defendant used the "Send Message" button associated with Class Members' profiles to market its own services to users of its website platform, rather than those of the listed Class Members;

(g)    whether Defendant generated subscribers (paid or unpaid) to its services as a result of the automated messages it issued when users clicked the "Send Message" button associated with Class Members' listings on its platform;

**(h)**    whether Defendant engaged in false association unfair competition under 15 U.S.C. § 1125(a)(1)(A) by representing some form of affiliation between Defendant and Class Members;

**(i)**    whether Defendant engaged in false advertising unfair competition under 15 U.S.C. § 1125(a)(1)(B) by representing it would communicate users' interest in clinical mental health services to Class Members listed on its website;

**(j)**    whether Defendant's conduct brings the case within the definition of an "exceptional case" under 15 U.S.C. § 1117;

**(k)**    whether Defendant otherwise engaged in unfair, unlawful, fraudulent, unethical, unconscionable, and/or deceptive trade practices;

**(l)**    whether reasonable users of Defendant's platform were likely to be confused or misled by Defendant's conduct;

**(m)**    whether Defendant had or should have had knowledge that its behavior was likely to deceive a reasonable user of its platform;

**(n)**    whether Defendant profited as a result of its deceptive acts;

**(o)**    whether Class Members have been injured;

**(p)**    whether Class Members are entitled to actual, compensatory, nominal, statutory, enhanced, and/or punitive damages;

**(q)**    whether Class Members are entitled to injunctive, declaratory, or other equitable relief;

**(r)**    whether Class Members are entitled to civil penalties;

**(s)**    whether Class Members are entitled to disgorgement of Defendant's unlawful profits; and

**(t)**    whether Class Members are entitled to reasonable attorneys' fee and costs.

**D.    Typicality (Fed. R. Civ. P. 23(a)(3))**

47.    Plaintiff's and Class Members' claims are based on the same legal theories and arise from the same unlawful and willful conduct of Defendant and resulted in the same injury. Plaintiff and each Class Member allege that their identification and professional profiles and credentials

included on Defendant's website without their permission which Defendant then used for its own profit. To the extent Defendant's actions are wrongful, the wrongful conduct applies in the same way to Plaintiff and each Class Member. Accordingly, in pursuing her own self-interest in litigating her claims, Plaintiff will also serve the interests of other Class Members.

**E.    Adequacy (Fed. R. Civ. P. 23(a)(4))**

48.    Plaintiff will fairly and adequately protect the interests of the Class Members. Plaintiff has retained competent counsel experienced in class action, consumer, business, and other complex litigation to ensure such protection. There are no material conflicts between the claims of the representative Plaintiff and the members of the Class and Subclass that would make class certification inappropriate. In fact, Plaintiff and Class Members were subjected to the same unlawful uniform conduct by Defendant and were each damaged in the same way. Plaintiff and counsel intend to prosecute this action vigorously.

**F.    Injunctive and Declaratory Relief (Fed. R. Civ. P. 23(b)(2))**

49.    Certification under Rule 23(b)(2) is appropriate because Defendant has acted and continues to act on grounds generally applicable to all Class Members – namely, by publishing individuals' names, images, professional biographies, credentials, and profiles without authorization – thereby making final injunctive relief and/or corresponding declaratory relief appropriate to the Classes as a whole.

50.    Plaintiff seeks class-wide injunctive relief requiring Defendant to:

    **(a)**    Remove all unauthorized professional profiles including, but not limited to, Class Members' names, images, professional biographies, credentials, and profiles from its platforms and materials;

    **(b)**    Cease representing Plaintiff and Class Members as affiliated with Defendant; and

    **(c)**    Issue corrective disclosures, where appropriate.

**G.    Predominance and Superiority (Fed. R. Civ. P. 23(b)(3))**

51.    The matter is properly maintained as a class action because the common questions of law or fact identified herein and to be identified through discovery predominate over questions that

may affect only individual Class Members. Further, the class action is superior to all other available methods for the fair and efficient adjudication of this matter. Because the injuries suffered by the individual Class Members are relatively small compared to the cost of the litigation, the expense and burden of individual litigation would make it virtually impossible for Plaintiff and Class Members to individually seek redress for Defendant's wrongful conduct. Even if any individual person or group(s) of Class Members could afford individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. The class action device is preferable to individual litigation because it provides the benefits of unitary adjudication, economies of scale, and comprehensive adjudication by a single court. In contrast, the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for the party (or parties) opposing the Class and would lead to repetitious trials of the numerous common questions of fact and law. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. As a result, a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Absent a class action, Plaintiff and the Class Members will continue to suffer losses, thereby allowing Defendant's violations of law to proceed without remedy and allowing Defendant to retain the proceeds of its ill-gotten gains.

52.    Plaintiff does not believe that any other Class Members' interests in individually controlling a separate action are significant, in that Plaintiff has demonstrated above that her claims are typical of the other Class Members and that she will adequately represent the Class. This particular forum is desirable for this litigation because Defendant is located in this district and, as a result, Plaintiff's claims arise from activities that occurred largely therein. Plaintiff does not foresee significant difficulties in managing the class action in that the major issues in dispute are susceptible to common proof.

53.    Plaintiff anticipates the issuance of notice, setting forth the subject and nature of the instant action, to the proposed Class Members. Upon information and belief, Defendant's own business records and/or electronic media can be utilized for the contemplated notices. To the extent

1    that any further notices may be required, Plaintiff anticipates using additional media and/or

2    mailings.

3        54.    This matter is properly maintained as a class action pursuant to Fed. R. Civ. P. 23 in

4    that without class certification and determination of declaratory, injunctive, statutory and other legal

5    questions within the class format, prosecution of separate actions by individual members of the

6    Class will create the risk of:

7        **(a)**    inconsistent or varying adjudications with respect to individual members of

8                the Class which would establish incompatible standards of conduct for the

9                parties opposing the Class; or

10       **(b)**    adjudication with respect to individual members of the Class would, as a

11               practical matter, be dispositive of the interests of the other members not

12               parties to the adjudication or substantially impair or impede their ability to

13               protect their interests.

14       55.    Common questions of law and fact exist as to the members of the Class and

15   predominate over any questions affecting only individual members, and a class action in this district

16   is superior to other available methods for the fair and efficient adjudication of the controversy,

17   including consideration of:

18       **(a)**    the interests of the members of the Class in individually controlling the

19               prosecution or defense of separate actions;

20       **(b)**    the extent and nature of any litigation concerning the controversy already

21               commenced by or against members of the Class;

22       **(c)**    the desirability or undesirability of concentrating the litigation of the claims

23               in the particular forum; and the difficulties likely to be encountered in the

24               management of a class action.

25   ///

26

27

28

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**

**Unfair Competition and False Affiliation in Violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)**
**(On Behalf of Plaintiff and All Classes/Subclasses)**

56.     The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

57.     Section 43(a)(1)(A) of the Lanham Act provides liability as to:

> Any person . . . who uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which  -
>
> (A)     is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

58.     Plaintiff and Class Members are professional mental health providers with distinctive names, likenesses, and reputations.

59.     As described herein, Defendant, without Plaintiff's or Class Members' knowledge or consent, used Plaintiff's and Class Members' names, likenesses, credentials, and/or professional profiles in connection with the advertising and promotion of Defendant's services, including publication in Defendant's online directory of available local providers, thereby misrepresenting Plaintiff's and Class Members' affiliation with or endorsement of Defendant's business.

60.     Defendant's use of Plaintiff's and Class Members' identities was made in connection with goods or services in interstate commerce and was intended to promote those goods and services.

61.     Defendant's conduct constitutes a false or misleading representation of fact likely to cause confusion, mistake, or deception as to the affiliation, connection, or association between Plaintiff and Class Members with Defendant, or as to the origin, sponsorship, or approval of Defendant's services by Plaintiff and Class Members in violation of 15 U.S.C. § 1125(a)(1)(A).

62.    The false and misleading statements and/or omissions described herein are material because they are intended to have an impact on whether consumers become Defendant's customers.

63.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff and Class Members have suffered and continue to suffer harm, and request damages, including class-wide injunctive relief requiring Defendant to remove all unauthorized professional profiles from its online website platform and other materials, cease representing or implying that Class Members or Plaintiff are affiliated with, or provide services through, Defendant, and issue corrective notices, where appropriate.

64.    Plaintiff and Class Members are also entitled to class-wide monetary relief, including actual and compensatory damages to recover for harm to Plaintiff and Class Members' professional reputations and goodwill, emotional distress, and disruptions of prospective economic relationships resulting from Defendant's false associations; disgorgement of Defendant's profits earned from unauthorized use of Plaintiff's and Class Members' professional profiles; enhanced damages, including a statutory multiplier of actual damages pursuant to 15 U.S.C. § 1117(a); attorneys' fees and costs under 15 U.S.C. § 1117(a) because this is an exceptional case involving willful and intentional misconduct; and any other relief the court deems necessary and proper, including equitable or declaratory relief necessary to prevent ongoing harm and ensure future compliance.

### SECOND CAUSE OF ACTION

**False Advertising in Violation of Section 43 of the Lanham Act,**
**15 U.S.C. § 1125(a)(1)(B)**
**(On Behalf of Plaintiff and All Classes)**

65.    The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

66.    Section 43(a)(1)(B) of the Lanham Act provides liability as to:

> Any person . . . who uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> . . .

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities. . . .

67. Defendant is a competitor of Plaintiff and Class Members and offers similar goods and/or services in the same market.

68. In connection with the commercial advertising and promotion of its goods and services, Defendant has made false or misleading statements of fact including, but not limited to, the unauthorized use of Plaintiff's and Class Members' names, likenesses, credentials, and professional profiles, which falsely suggest or imply that Plaintiff and Class Members are affiliated with or endorse Defendant's services.

69. These representations are literally false or in the alternative, misleading in their context, and likely to deceive a substantial portion of the intended audience.

70. Defendant's representations were made in commercial advertising or promotion and were disseminated in interstate commerce.

71. The false or misleading representations are material, in that they are likely to influence the purchasing decisions of consumers by conveying a false impression of Plaintiff's and Class Members' endorsement, association with, or approval of Defendant's goods and services.

72. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff and Class Members have suffered and continue to suffer harm, and request the following damages including, but not limited to, class-wide injunctive relief requiring Defendant to cease making or disseminating any false or misleading advertising about its goods or services, refrain from representing or implying that its services are endorsed by, affiliated with, or provided in partnership with Plaintiff or any Class Member, remove and correct any previously published false or misleading claims, and undertake a corrective advertising campaign sufficient to counter the public deception caused by its false statements, and to restore accurate perceptions.

73. Plaintiff and Class Members are also entitled to class-wide monetary relief including, but not limited to, actual and compensatory damages as a result of Defendant's false advertising, including loss of business, market share, and reputational harm; disgorgement of Defendant's

profits attributable to the false advertising and deceptive promotional statements, pursuant to 15 U.S.C. § 1117(a), regardless of whether Class Members can show individualized losses; restitution of economic benefits obtained through unjust enrichment arising from false or misleading representations; enhanced damages, including a statutory multiplier of actual damages pursuant to 15 U.S.C. § 1117(a); attorneys' fees and costs pursuant to 15 U.S.C. § 1117(a), as this case constitutes an exceptional circumstance involving willful and deliberate misconduct by Defendant; and any other relief the Court deems just and proper, including equitable remedies to protect the business interests and reputations of Plaintiff and Class Members.

## THIRD CAUSE OF ACTION

**Violation of the Maryland Consumer Protection Act,
Md. Code, Com. Law § 13-101, et seq.
(On Behalf of Plaintiff and the Maryland Subclass)**

74.    The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

75.    Plaintiff and Class Members are mental health providers in the State of Maryland.

76.    Defendant is a business entity operating in Maryland and/or targeting Maryland consumers through its directory and online marketing of professional mental health services.

77.    Without Plaintiff's and Class Members' knowledge or consent, Defendant published Plaintiff's and Class Members' names, likenesses, credentials and/or professional profiles in a directory or promotional materials representing that Plaintiff and Class Members are affiliated with, endorse, or offer services through Defendant's online website platform.

78.    Defendant's use of Plaintiff's and Class Members' names, likenesses, credentials, and/or professional profiles was made in the context of promoting Defendant's goods or services to consumers in the State of Maryland and was intended to influence consumer decisions about whether to engage or purchase services from Defendant.

79.    Defendant's conduct constitutes a deceptive trade practice in violation of the Maryland Consumer Protection Act ("MCPA"), Md. Code, Com. Law § 13-301(1), (2), (3), (5), and (9), by:

**(a)** Passing off services as those of another;

**(b)** (2) Causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or affiliation of services;

**(c)** (3) Representing affiliation or endorsement that does not exist;

**(d)** (5) Advertising and offering services of clinicians that are not affiliated with Defendant; and/or

**(e)** (9) Advertising goods or services with intent not to sell them as advertised.

80.    Defendant's deceptive conduct has a tendency or capacity to mislead consumers by creating a false impression that Plaintiff and Class Members are affiliated with or endorse Defendant's services.

81.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered injury, including but not limited to harm to professional reputation, emotional distress, and loss of control over their names and likenesses.  Consumers have also been misled or deceived.

82.    Defendant's actions were willful and knowing violations of the MCPA, entitling Plaintiff and Class Members to injunctive and monetary relief, reasonable attorneys' fees and costs pursuant to Md. Code, Com. Law § 13-408, and such other relief as the Court deems just and proper.

## **FOURTH CAUSE OF ACTION**

### **Common Law Unfair Competition**
### **(On Behalf of Plaintiff and the Maryland Subclass)**

83.    The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

84.    Plaintiff and Class Members are mental health providers in the State of Maryland.

85.    Without Plaintiff's or Class Members' consent or authorization, Defendant published Plaintiff's and Class Members' names, likenesses, credentials, and/or professional profiles in an online directory and promotional materials intended to advertise and promote Defendant's business and services.

CLASS ACTION COMPLAINT

86.     Defendant's conduct was calculated to deceive the public by falsely suggesting that Plaintiff and Class Members were affiliated with, endorsed, or participated in Defendant's business, in order to attract customers and gain commercial advantage.

87.     Defendant knowingly and intentionally engaged in this conduct to misappropriate the commercial value of Plaintiff's professional reputation and goodwill for its own benefit.

88.     Defendant's actions constitute unfair competition under Maryland common law, which prohibits deceptive business practices that harm competitors and mislead the public.

89.     As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered injury including, but not limited to, harm to professional reputation, emotional and economic distress, and loss of control over their names and likenesses.  Consumers have also been misled or deceived.

90.     Defendant's actions were willful and knowing violations, entitling Plaintiff and Class Members to injunctive and monetary relief, disgorgement of profits, punitive damages, attorneys' fees and costs to the extent available, and such other relief as the Court deems just and proper.

### FIFTH CAUSE OF ACTION

**Common Law Tortious Interference with Economic Relations**
**(On Behalf of Plaintiff and the Maryland Subclass)**

91.     The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

92.     Plaintiff and Class Members are mental health providers who maintain business relationships and reasonably expect future business opportunities with clients, referral sources, and professional institutions.

93.     Without authorization, Defendant published Plaintiff's and Class Members' names, likenesses, credentials and/or professional profiles in a directory and promotional materials that falsely represented Plaintiff's and Class Members' affiliation with Defendant's services.

94.     Defendant's conduct was intended to divert business or inquiries from Plaintiff's and Class Members' own professional activities to Defendant's platform, and to profit from Plaintiff's and Class Members' professional reputations.

95.     Defendant knew or should have known that the unauthorized listing could interfere with Plaintiff's and Class Members' ability to attract and retain clients or find other professional engagements.

96.     Defendant's conduct constitutes an intentional and improper interference with Plaintiff's and Class Members' economic relations and prospective advantage.

97.     As a direct and proximate result of Defendant's interference, Plaintiff and Class Members have suffered economic harm, including lost business opportunities and reputational damage.  Accordingly, they seek injunctive and monetary relief, punitive damages, and other relief as the Court deems just and proper.

## SIXTH CAUSE OF ACTION

### Common Law Appropriation of Name or Likeness/Invasion of Privacy
### (On Behalf of Plaintiff and the Maryland Subclass)

98.     The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

99.     Plaintiff and Class Members are mental health providers in the State of Maryland with professional reputations and identities associated with their names, images, and credentials, which hold value in the mental health industry and among clients and colleagues.

100.    Without Plaintiff's and Class Members' knowledge, permission, or consent, Defendant published Plaintiff's and Class Members' names, likenesses, credentials, and professional profiles in an online directory for the purpose of advertising and promoting Defendant's services.

101.    Defendant used Plaintiff's and Class Members' identities for its own commercial advantage, including to attract business, enhance its reputation, or imply that Plaintiff and Class Members were affiliated with or endorsed Defendant's services.

102.    Defendant's conduct constitutes the tort of appropriation of name or likeness, a recognized form of invasion of privacy under Maryland law, which prohibits the unauthorized commercial use of another's identity.

CLASS ACTION COMPLAINT

103.    Defendant's use of Plaintiff's and Class Members' identities was intentional and without privilege or justification.

104.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members' have suffered damages, including emotional distress, reputational harm, and loss of control over the commercial use of their identities, as well as the unjust enrichment of Defendant and seek injunctive and monetary relief, disgorgement of profits, punitive damages, and such other relief the Court deems just and proper.

## SEVENTH CAUSE OF ACTION

### Common Law False Light Invasion of Privacy
### (On Behalf of Plaintiff and the Maryland Subclass)

105.    The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

106.    Plaintiff and Class Members are respected mental health providers in the State of Maryland who maintain a public reputation for integrity, professionalism, and independence.

107.    Without Plaintiff's and Class Members' knowledge or consent, Defendant used Plaintiff's and Class Members' names, likenesses, credentials, and/or professional profiles in a publicly accessible directory and promotional materials that falsely implied Plaintiff and Class Members were affiliated with, endorsed, or offered services through Defendant's online website platform.

108.    Defendant's actions placed Plaintiff and Class Members in a false light by misrepresenting their professional associations and suggesting an endorsement or business relationship with Defendant that does not exist.

109.    The false implication of affiliation with Defendant would be highly offensive to a reasonable person in Plaintiff's and Class Members' professional positions, as it falsely associates them with a business or service they have no connection to and may not support.

110.    Defendant acted with reckless disregard for the truth by publishing Plaintiff's and Class Members' information without authorization or verification of affiliation, and with knowledge that the representation was false or misleading.

111.    As a result of Defendant's conduct, Plaintiff and Class Members have suffered emotional distress, reputational harm, and loss of control over their professional images and identities, and seek injunctive and monetary relief, punitive damages, and such other relief as the Court deems just and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and the proposed Class and Subclass, prays for relief and judgment against Defendant as follows:

A.    Certification of the Classes pursuant to Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure and appointment of Plaintiff's counsel as Class Counsel;

B.    Injunctive relief prohibiting further use of Plaintiff's and Class Members' names, likenesses, or professional identities without authorization;

C.    An award of actual, compensatory, and/or statutory damages, including damages to reputation and goodwill;

D.    Disgorgement of profits Defendant obtained as a result of the false endorsement and/or advertising;

E.    Punitive and/or enhanced damages or penalties for willful conduct;

F.    Attorneys' fees and costs;

G.    Pre-judgment and post-judgment interest; and

H.    Any other relief that this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff and Class Members demand a trial by jury on all issues so triable.

Dated: June 26, 2025                          Respectfully Submitted,

                                              */s/ Richard D. McCune*
                                              Richard D. McCune (State Bar No. 132124)
                                              rdm@mccunelawgroup.com
                                              Emily J. Kirk (IL State Bar No. 6275282)*
                                              ejk@mccunelawgroup.com
                                              Valerie L. Savran (State Bar No. 334190)
                                              vls@mccunelawgroup.com
                                              **MCCUNE LAW GROUP, APC**
                                              18565 Jamboree Road, Suite 550
                                              Irvine, California 92612

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dana R. Vogel (AZ State Bar No. 030748)*
drv@mccunelawgroup.com
**MCCUNE LAW GROUP, APC**
2415 East Camelback Road, Suite 850
Phoenix, Arizona 85016

*Attorneys for Plaintiff and the Putative Class*

*Pro Hac Vice* applications to be submitted

CLASS ACTION COMPLAINT